UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TIMOTHY DIMOLA,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:17-cv-04094-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Michael Timothy Dimola ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 12 and 13] and briefs addressing disputed issues in the case [Dkt. 19 ("Pl. Br."), Dkt. 20 ("Def. Br."), and Dkt. 21 (Pl. Rep.)]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In January 2014, Plaintiff filed an application for DIB, alleging disability as of April 1, 2013. [Dkt. 16, Administrative Record ("AR") 25, 141-42.] Plaintiff's

application was denied at the initial level of review and on reconsideration. [AR 25, 98-102, 105-09.] A hearing was held before Administrative Law Judge James Delphey ("the ALJ") on January 6, 2016. [AR 41-75.] On January 29, 2016, the ALJ issued an unfavorable decision. [AR 25-36.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 1, 2013. [AR 27.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of cervical degenerative disc disease, bilateral shoulder osteoarthritis, glenoid labral tears, impingement syndrome, and bilateral carpal tunnel syndrome. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 28]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work (20 C.F.R. § 404.1567(c)), which requires no more than frequent pushing/pulling, frequent climbing, balancing, stooping, kneeling, crouching, and crawling, and frequent reaching, handling and fingering. [AR 28.] At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a drywall applicator, as that job was actually performed. [AR 35-36.]

The Appeals Council denied review of the ALJ's decision on March 30, 2017. [AR 1-3.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:
1. The ALJ erred in diminishing the opinions of Plaintiff's treating physician and the agreed medical expert.
2. The ALJ improperly evaluated Plaintiff's testimony.
3. Plaintiff should be found disabled at step five.

[Pl. Br. at 1-12; Pl. Rep. at 1-4.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 12; Pl. Rep. at 4.]

The Commissioner asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record if the Court finds error in the ALJ's consideration of the record. [Def. Br. at 17-18.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

**A. Dr. Sobol and Dr. Feiwell**

Plaintiff contends the ALJ erred by improperly rejecting the opinions of his treating orthopedic surgeon, Dr. Philip Sobol, and the agreed medical expert, Dr. Lawrence Feiwell. [Pl.'s Br. at 2-8; Pl. Rep. at 1-2.]

In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another medical opinion, an ALJ may reject it only by providing

3

specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks and citation omitted).

### 1. Dr. Sobol

In November 2013, almost eight months after his alleged onset date, Plaintiff began receiving treatment at Dr. Sobol's office in connection with Plaintiff's claim for workers' compensation benefits. [AR 217-382.] On June 5, 2015, Dr. Sobol completed a permanent and stationary report. [AR 359-82.] Dr. Sobol diagnosed Plaintiff with cervical/trapezial musculoligamentous sprain/strain with bilateral upper extremity radiculitis, bilateral shoulder strain with bilateral impingement, tendinitis and bursitis, left elbow chronic olecranon bursitis, bilateral forearm flexor and extensor tenosynovitis, bilateral wrist sprain with bilateral de Quervain's tenosynovitis and moderate to severe carpal tunnel syndrome, lumbar spine musculoligamentous sprain/strain, and bilateral knee sprain. [AR 368-69.] Dr. Sobol opined that Plaintiff's conditions precluded him from engaging in the following activities: heavy lifting; repetitive motioning and prolonged posturing of the head and neck; repetitive or forceful pushing, pulling, and overhead work; repetitive flexion and extension of the elbows and wrists; repetitive finger dexterity and fine manipulation; repetitive gripping, grasping, squeezing, holding, torqueing, and other activities of comparable physical effort; repetitive bending and stooping; and repetitive climbing, walking over uneven ground, squatting, kneeling, crouching, crawling, pivoting, and other activities of comparable physical effort.

[AR 380.] Dr. Sobol concluded that with these limitations, Plaintiff was unable to perform his former work as a dry wall finisher. [AR 380.]

Three months later, on September 11, 2015, Dr. Sobol completed a functional capacities evaluation form, assessing Plaintiff with significantly greater restrictions, in some regards. [AR 383.] Dr. Sobol opined that in an 8-hour workday, Plaintiff could tolerate sitting for 6 hours, standing for 1 hour, walking for 1 hour, lifting and carrying up to 24 pounds occasionally, bending and reaching above shoulder level occasionally, using his feet for repetitive movements, and using his hands for simple grasping, and driving. [*Id.*] Dr. Sobol further found that Plaintiff was precluded from the following: squatting; crawling; climbing; lifting 25 pounds or more; using his hands for pushing, pulling, and fine manipulation; and performing activities involving unprotected heights, being around moving machinery, and exposure to marked changes in temperature and humidity. [*Id.*]

The ALJ gave "little weight" to the work restrictions assessed by Dr. Sobol to the extent they conflicted with Plaintiff's RFC, as set forth in the decision. [AR 28, 34.] The ALJ noted that many of the restrictions Dr. Sobol assessed were inconsistent with and more restrictive than those found by any other source. The consultative examining physician, Dr. Jerry Chuang, found Plaintiff could perform a range of medium work, which was consistent with Plaintiff's RFC and the record as a whole. [AR 28, 33-34, 438.] In addition, the agreed medical expert, Dr. Feiwell, reported that Plaintiff's bilateral knee examination and X-rays were normal. [AR 32, 402, 404.] Because substantial medical evidence contradicts Dr. Sobol's conclusions, the ALJ only needed to provide specific and legitimate reasons supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1216. The ALJ did so here.

The ALJ correctly noted that some of the limitations assessed by Dr. Sobol conflicted with his own findings on examination. [AR 32, 35.] For example, Dr. Sobol's treatment notes from May 2015 reflect that Plaintiff was able to ambulate

5

without significant limp or antalgic gait. [AR 32, 357.] Dr. Sobol also noted that Plaintiff had described his knee pain as "manageable" and there was no giving way, locking, or laxity. [AR 357.] However, in June 2015, Dr. Sobol reported that Plaintiff's bilateral knee impairments precluded repetitive walking over uneven ground and in September 2015, Dr. Sobol opined that Plaintiff was limited to walking 1 hour in an 8-hour workday. [AR 31, 35, 380, 383.] Thus, the ALJ's conclusion that Dr. Sobol's opinion was inconsistent with his findings on examination was a specific, legitimate basis supported by substantial evidence for discounting his opinion. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (upholding rejection of treating physician's opinion as his own treatment notes did not support extensive conclusions regarding the claimant's limitations); *Bayliss*, 427 F.3d at 1216 (discrepancy between doctor's recorded observations regarding the claimant's capabilities and statement that the claimant could stand or walk for only 15 minutes at a time was a clear and convincing reason for not relying on the doctor's opinion).

      The ALJ also observed that the work restrictions assessed by Dr. Sobol in June 2015 conflicted with the limitations he assessed in September 2015. [AR 31, 35, 380, 383.] As noted, Dr. Sobol restricted Plaintiff to no repetitive walking on uneven surfaces in June 2015, but by September 2015, Dr. Sobol opined that Plaintiff was capable of walking no more than 1 hour in an 8-hour workday. [AR 31, 35, 380, 383.] Further, Dr. Sobol assessed no restrictions in Plaintiff's ability to stand in June 2015, but by September 2015, Dr. Sobol reported that Plaintiff was limited to standing just 1 hour in an 8-hour workday. [AR 380, 383.] The ALJ noted that these "considerably greater limitations" were "not supported by any contemporaneous medical evidence showing a significant worsening of [Plaintiff's] condition(s)." [AR 35.] These apparent conflicts provide substantial evidence for the ALJ's decision to accord Dr. Sobol's opinion less weight. *See Connett*, 340 F.3d at 875; *Gabor v. Barnhart*, 221 F. App'x 548, 550 (9th Cir. 2007) ("internal

inconsistencies" in physician's report provided a proper basis for excluding that medical opinion).

Plaintiff suggests that the ALJ erred by failing to translate Dr. Sobol's use of workers' compensation terms of art into terms useful in the social security context. [Pl. Br. at 5; Pl. Rep. a 1-2 (citing *Booth v. Barnhart*, 181 F. Supp. 2d 1099 (C.D. Cal. 2002); *Desrosiers v. Secretary*, 846 F.2d 573 (9th Cir. 1988)).] However, the ALJ's decision did not need to include "an explicit 'translation'" of worker's compensation terms of art into social security terminology. *See Booth*, 181 F. Supp. 2d at 1106. Moreover, any error was harmless. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an ALJ's error may be harmless in a social security case "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion"). As the inconsistencies in Dr. Sobol's opinions regarding Plaintiff's limitations in standing and walking were apparent from his reports and treatment record, there was no need to translate his opinions into social security terminology. [AR 30-32, 34-35, 357, 380, 383.] Thus, the ALJ's decision rejecting Dr. Sobol's opinion was supported by substantial evidence.

### 2. Dr. Feiwell

Plaintiff contends that the ALJ erred in giving diminished weight to Dr. Feiwell's opinion. [Pl. Br. at 2-4, 6-8; Pl. Rep. at 1-2.] But, as noted by the ALJ, Dr. Feiwell did not assess Plaintiff with any work restrictions. [AR 35.] Further, the ALJ discussed Dr. Feiwell's opinion and examination findings in the decision. The ALJ acknowledged that Dr. Feiwell diagnosed Plaintiff with cervical degenerative disc disease, osteoarthritis of the bilateral glenohumeral joints with evidence of glenolabral tears, impingement syndrome, and bilateral carpal tunnel syndrome, and concluded that these conditions were severe impairments requiring surgery. [AR 32-33, 421.] In addition, Dr. Feiwell found that Plaintiff had a normal bilateral knee examination, normal elbow examination, normal thoracic spine

7

examination, and normal back examination with some tenderness in the right posterior superior iliac spine. [AR 32, 404.] While in September 2015, Dr. Feiwell found that Plaintiff had developed instability in his wrists, degenerative changes in his shoulders and degenerative changes with instability in his neck, Dr. Feiwell expressly stated that Plaintiff had not reached maximum medical improvement and required further evaluation. [AR 405.] Thus, the Court concludes that the ALJ's consideration of Dr. Feiwell's opinion was supported by substantial evidence and remand is not warranted.[1]

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for discounting his subjective symptom testimony. [Pl. Br. 8-11; Pl. Rep. 3-4.]

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must identify what testimony is not credible and what evidence discredits the testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ provided several specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony regarding the

---

[1] Although Plaintiff asserts that the ALJ should have translated Dr. Feiwell's opinion from the workers' compensation context to the social security disability context, Dr. Feiwell did not specify any functional limitations which needed to be translated. [Pl. Br. at 8; AR 35.]

8

debilitating effects of his symptoms. First, Plaintiff acknowledged that he stopped working in March 2013 because he was laid off, rather than due to any disabling medical conditions. [AR 29, 44-45.] At the hearing, Plaintiff explained that although he did not feel physically fit or fully capable in recent years, he had been able to "struggle[] through" his work as a drywall finisher and did not receive complaints from his employers. [AR 45, 48-49.] An ALJ may reasonably draw an adverse inference from evidence that a claimant stopped working for reasons other than his allegedly disabling medical condition. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ did not err in discounting the claimant's credibility when he stopped work due to a layoff and the alleged disability onset date was the same date as the layoff); *see also Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (affirming finding that the claimant's back problems were not disabling when that impairment had remained constant for a number of years and had not prevented her from working).

    The ALJ also noted that Plaintiff received unemployment benefits and sought work after his alleged onset date of disability of April 1, 2013. [AR 29-30, 45.] Plaintiff testified that after he was laid off, he diligently looked for work for about six months and collected unemployment benefits. [AR 45-46.] Plaintiff also admitted that he felt capable of working during that time period. [AR 45.] Under these circumstances, the ALJ reasonably concluded that Plaintiff's receipt of unemployment benefits undermined his allegations that he has been unable to work since his alleged onset date. *See Carmickle*, 533 F.3d at 1162 (holding that a claimant who holds himself available for full-time work when receiving unemployment benefits is inconsistent with allegations of disability).

    The ALJ further found that Plaintiff did not seek medical treatment for his alleged impairments until late 2013. [AR 27, 29, 34.] The ALJ noted that Plaintiff began seeking medical attention, "only after giving up his job search and filing a workers' compensation claim," which was approximately eight months after his

9

alleged onset date. [AR 29.] It was reasonable for the ALJ to infer that Plaintiff's impairments were not as disabling as alleged based on this period in which he failed to seek treatment. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding that the claimant's failure to seek treatment for three to four months was "powerful evidence regarding the extent to which she was in pain"); *Molina v. Astrue*, 674 F.3d 1104, 1112-14 (9th Cir. 2012) (ALJ may consider a claimant's unexplained failure to pursue treatment in assessing subjective symptom testimony).

In sum, the ALJ provided specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony regarding the nature and severity of his symptoms.[2]

**C. Disability Under the Grids**

Plaintiff contends that based on the opinions of Drs. Sobol and Feiwell, his RFC is between sedentary and light, he is precluded from performing his past relevant work as a drywall applicator, and he should be found disabled under Rules 201.06 and 202.06 of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. § Pt. 404, Subpt. P, App. 2. [Pl. Br. 11-12; Pl. Rep. at 4.] As discussed, however, the ALJ gave specific and legitimate reasons for giving limited weight to Dr. Sobol's opinion that Plaintiff's limitations exceeded those set out in the RFC and Dr. Feiwell did not assess Plaintiff with any work restrictions. Therefore, the ALJ did not err in

---

[2] Plaintiff asserts that some of the other reasons cited by the ALJ may not have justified rejection of Plaintiff's subjective symptom testimony. [Pl. Br. at 10-11.] Because the reasons discussed above provide substantial evidence to support the ALJ's adverse credibility determination, any asserted error was harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (stating that the court may affirm an ALJ's overall credibility conclusion even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("[e]ven if we discount some of the ALJ's observations of [the claimant's] inconsistent statements and behavior . . . we are still left with substantial evidence to support the ALJ's credibility determination.").

failing to incorporate any additional findings in Plaintiff's RFC. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); 20 C.F.R. § 404.1546(c) (It is the responsibility of the ALJ to determine a claimant's RFC). Further, the ALJ properly relied on the opinion of the consultative examining physician in assessing Plaintiff with an RFC for a range of medium work. [AR 28, 33-34, 434-39.] And, the testimony of the vocational expert supported the ALJ's conclusion that Plaintiff was capable of performing his past relevant work, as actually performed. [AR 35-36, 67-69]; *see* Social Security Ruling 00-4p (explaining that the Commissioner may use a vocational expert at step four to resolve complex vocational issues). Thus, Rules 201.06 and 202.06 of the Grids are not applicable in this case and Plaintiff's step five argument is rejected. *See Gregory*, 844 F.2d at 666 (stating that the Grids only apply at step five when the claimant has been found unable to return to past relevant work).

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS ORDERED.**

DATED: May 17, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE